## APPEALS OF GARDINER & WELLS CO., INC., JOSEPH H. WEINBERG, AND ADOLPHUS J. WELLS.

Docket Nos. 2274, 2431, 2435. Submitted May 16, 1925. Decided October 5, 1925.

*Mark Eisner, Esq.*, for the taxpayer.
*J. A. Adams, Esq.*, for the Commissioner.

Before JAMES, LITTLETON, SMITH, and TRUSSELL.

These appeals are from determinations of deficiencies in income and profits taxes as follows:

Gardner & Wells Co., Inc_____ $2,838.93 for 1920
Joseph H. Weinberg_____ 73.71 for 1919
Adolphus J. Wells_____ 50.18 for 1919

They result from the denial of personal service classification to Gardiner & Wells Co, Inc.  The appeals were consolidated at the hearing and from the evidence submitted the Board makes the following

FINDINGS OF FACT.

Gardiner & Wells Co., Inc., is a New York corporation with its principal office at 150 Madison Avenue, New York City.  Joseph H. Weinberg and Adolphus J. Wells are stockholders in Gardiner & Wells Co., Inc., and reside at 31 West Ninety-fifth Street, New York City, and Hartsdale, N. Y., respectively.

The corporation was organized in 1918 to carry on the business of an advertising agency.  Capital stock was issued in the amount of $100,000 for $10,000 in cash and good will valued at $90,000. The stock was held during the years 1919 and 1920, as follows:

|  | 1919. | 1920. |
|---|---|---|
|  | *Shares.* | *Shares.* |
| William R. Gardiner | 375 | 375 |
| Adolphus J. Wells | 375 | 375 |
| Joseph H. Weinberg | 250 | 250 |
| H. M. Bourne (received as gift December, 1920) | | 3 |

During 1919 and 1920 the principal stockholders were actively and regularly engaged in the business of the corporation.  Mr. Gardiner had charge of the copy department.  Mr. Wells did all of the soliciting except in two instances, when soliciting was done by Mr. Gardiner.  Mr. Wells also wrote some copy.  Mr. Weinberg had charge of the office and the details of the business.

The business of the company was to prepare and place advertising with newspapers, magazines, booklets, and other advertising media, and to superintend the display of copy in these publications.  Business was procured in various ways.  Sometimes an advertiser called on the company and requested that a representative be sent to interview him.  At other times information was received that an advertiser was dissatisfied with the results he was getting from his advertising and a representative of the company called to see him with a view of soliciting his business.  If the business was procured, a survey of the field was made by one of the stockholders before any work was done on account.  This survey consisted in finding out the conditions in the advertiser's particular line; what competition he had to meet; what the financial situation was in the field where the advertising was to go; and why the products of the advertiser were not selling.  The company contracted with the publishers only for the

space needed. It made no agreements to take a minimum amount of space for specified periods.

The copy was written by the stockholders or in accordance with their suggestions by some employee in the copy department. If the copy was written by one of the employees, it was edited by the stockholders. The company did not maintain art or mechanical departments, but contracted for such work with outside firms. When the copy was approved by the advertiser it was also sent to outside firms to be electrotyped and to have cuts and mats made.

In some cases the company was employed on a salary basis in the capacity of advertising counsel, but in most cases it was employed on a percentage basis. The charge was 15 per cent of the net amount of the bill to the advertiser. The taxpayer corporation was a recognized advertising agency and as such was entitled to certain discounts, ranging as high as 15 per cent plus 2 per cent for cash. If a discount was allowed, the benefit was passed to the advertiser. The company would compute the net amount the advertiser would have to pay for the advertising and to that amount would add a charge of 15 per cent. On bills for electrotyping and preparing cuts and mats a charge of 25 or 30 per cent was added. In the case of art and mechanical work the charge was at the rate of 15 per cent. In some instances no charge was made for art or mechanical work.

The business occupied about 5,000 square feet of floor space. In this space the copy, rate, order, voucher, stenographic, forwarding, and checking departments and the offices of the members were located. The furniture was valued at between $7,000 and $8,000. About 16 employees other than stockholders were regularly employed in the business. These employees received total salaries in 1919 amounting to $36,098.27, and in 1920 amounting to $42,076.03, as compared with $47,554.44 and $52,000 paid to members of the corporation during those years. One of the employees in the copy department received a salary of $10,000 a year. His duties were varied. He conferred with stockholders with reference to the work of the company; analyzed advertising situations; wrote and prepared articles; and interviewed advertisers. One of the employees in the rate department drew a salary of $6,000 a year. His duties consisted of interviewing publishers and procuring rate schedules. The rates varied according to the space taken and the number of insertions. This particular employee compiled and filed such data.

The publishers always billed Gardiner & Wells Co., Inc., for amounts due them for advertising space. That company in turn computed the net amount of the bill, added a 15 per cent charge to this amount and billed the advertiser. The bills were received from the publishers on or about the 1st of each month and were payable

on or before the 10th of the month. The taxpayer corporation immediately billed the advertiser and received payment in sufficient time to pay the publisher on the date the payment was due and thereby procured for the advertiser the benefit of the discount for cash. The name of the advertiser always appeared on the bills received from the publishers.

The income and deductions of Gardiner & Wells Co., Inc., for the years 1919 and 1920, were as follows:

|  | 1919. | 1920. |
|---|---|---|
| INCOME. |  |  |
| From advertising sales | $135, 463. 89 | $126, 913. 88 |
| Other income | 3, 340. 14 | •315. 92 |
| Total | 138, 804. 03 | 127, 229. 80 |
| DEDUCTIONS. |  |  |
| Cost of materials | 33, 133. 58 | (Not shown.) |
| Compensation of members | 47, 554. 44 | 52, 000. 00 |
| Labor | 36, 098. 27 | 42, 076. 03 |
| Rent | 4, 000. 00 | 4, 028. 31 |
| Traveling expenses |  | 9, 347. 98 |
| Other deductions | 20, 715. 18 | 6, 995. 57 |
| Total | 141, 501. 47 | 114, 447. 89 |
| Net gain or loss | (2, 697. 44) | 12, 781. 91 |

The item of $33,133.58, appearing as a deduction for 1919 under the heading "Cost of materials," represents the cost of composition, art work, prints, and other incidentals necessary in the preparation of copy. The deduction designated as "Labor," amounting to $36,098.27, represents salaries of employees. The amount of $20,-715.18, listed above as "Other deductions," represents amounts paid for telephone, postage, telegrams, and other incidental expenses.

The balance sheets for the beginning and the end of the year 1919 were as follows:

JANUARY 1, 1919.

| ASSETS. | | LIABILITIES. | |
|---|---|---|---|
| Cash | $2, 255. 10 | Accounts payable: | |
| Liberty bonds | 1, 000. 00 | Advertising accounts | $56, 669. 53 |
| Bills receivable on hand | 2, 287. 27 | Mechanical and art | 1, 343. 51 |
| Accounts receivable: | | Publicity | 794. 59 |
| Advertising accounts | 65, 732. 60 | A. J. Johnson | 2, 956. 75 |
| W. R. Gardiner | 225. 85 | E. Pelletier | 651. 76 |
| A. J. Wells | 137. 97 | J. R. Wakeman | 1, 134. 04 |
| Merritt Johnson Co | 216. 63 | Capital stock | 100, 000. 00 |
| A. C. Mace | 124. 95 | Surplus | 4, 326. 70 |
| Furniture and fixtures | 5, 896. 51 | | |
| Good will | 90, 000. 00 | | |
| Total | 167, 876. 88 | Total | 167, 876. 88 |

DECEMBER 31, 1919.

| ASSETS. | | LIABILITIES. | |
|---|---|---|---|
| Cash | $6,007.22 | Bills payable | $8,000.00 |
| Furniture and fixtures | 5,000.00 | Accounts payable: | |
| Bills receivable | 250.00 | Advertising | 89,936.93 |
| Accounts receivable: | | Mechanical | 5,991.22 |
| Advertising | 107,123.98 | A. J. Johnson | 170.06 |
| W. R. Gardiner | 225.85 | J. R. Wakeman, No. 1 | 112.92 |
| A. J. Wells | 166.37 | J. R. Wakeman, No. 2 | 3,409.09 |
| Good will | 90,000.00 | W. R. Gardiner | 1,666.66 |
| Stocks and bonds: | | A. J. Wells | 7,631.23 |
| American Supply Razor | | Capital stock | 100,000.00 |
| Co., stock | 1,800.00 | | |
| Liberty bonds | 4,000.00 | | |
| Deficit | 2,344.69 | | |
| Total | 216,918.11 | Total | 216,918.11 |

The item "Accounts receivable," appearing on the balance sheet for December 31, 1919, in the amount of $107,123.98, represents amounts due from advertisers for advertising placed on their account by the taxpayer. The item "Accounts payable," amounting to $89,936.93 represents amounts owing to the various advertising media. The account payable, designated as "Mechanical," represents amounts owing for mechanical and art work. The J. R. Wakeman accounts, No. 1 and No. 2, amounting to $112.92 and $3,409.09, respectively, represent amounts owing for art work. The A. J. Johnson account represents amounts payable for supplies.

The stockholders deducted on their individual returns for 1919 the amount of the net loss sustained by the company for that year in proportion to their holdings of stock and reported the net income of the corporation for the year 1920 on their returns for that year in the same proportion. The Commissioner denied the right of Gardiner & Wells Co., Inc., to classification as a personal service corporation under section 200, and denied to the stockholders the right to deduct proportionate shares of the net loss of the company on their individual returns for the year 1919, and for the same reason determined that the net income of Gardiner & Wells Co., Inc., for the year 1920 was taxable to the corporation and not to the stockholders. This finding by the Commissioner resulted in the determination of the deficiencies which are the subject matter of these appeals.

DECISION.

The determinations of the Commissioner are approved.

ARUNDELL not participating.